UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:18-CR-37 |
| | ) | |
| LAMONTE ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before me on Lamonte Adams' pro se motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 517]. Adams is a 39 year old male who is currently incarcerated at FCI Terre Haute, with an anticipated release date of September 4, 2032. He has served approximately 45 months or 25% of his 206 month sentence. [DE 521 at 5; Ex. 1.] In his motion, Adams claims that COVID-19 "is an extraordinary and compelling reason in itself," and he should be released because the Delta variant is more contagious, and he suffers from obesity, diabetes and high blood pressure. [DE 517 at 5-7.] Plus he claims the living conditions at FCI Terre Haute are inhumane because of its poor ventilation system and sometimes they go without running water and electricity, which Adams claims is cruel and unusual punishment in violation of the Eight Amendment. [*Id.* at 8.]

At the time of the government's response, there were only 6 staff members who reported positive for COVID-19 at FCI Terre Haute, and zero inmates. [DE 521 at 8.]

However, in his reply Adams claims there is a recent outbreak in his housing unit. [DE 533 at 1.]  The Bureau of Prisons' website does note that Terre Haute is currently on level 3, meaning it is undertaking intense modifications to prevent the spread of COVID-19.  https://www.bop.gov/coronavirus (Last viewed November 9, 2021).

The government has provided Adams' medical records, which indicate that he was offered the Pfizer vaccine in prison on March 3, 2021, and he refused it. [DE 523-2 at 110.] Additionally, the records reveal that Adams is non-insulin dependent due to diabetes and has hypertension. [*Id.* at 3, 9, 14, 20, 33, 46.]  Otherwise, Adams seems to be in good health.  He takes medication for diabetes and hypertension, and they seem to be well managed. [*Id.* at 65, 68.]

Adams was involved in a large-scale multi-state drug conspiracy and he qualified as a leader-organizer under the guidelines. [DE 521 at 2.]  He was charged with 12 other defendants in a superseding indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, heroin, and fentanyl analogue in violation of 21 U.S.C. § 846. [DE 127.]  I sentenced him pursuant to a plea agreement on July 16, 2020, to 206 months imprisonment to be followed by 5 years of supervised release. [DE 402.] He has exhausted his administrative remedies. [DE 521 at 5.]

Section 3582(c)(1) permits a district judge to release a prisoner if the judge finds "extraordinary and compelling reasons" for that step, and the judge has also considered any applicable policy statement of the Sentencing Commission and reviewed the

2

criteria of § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1). The Seventh Circuit held in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), that none of the Sentencing Commission's policy statements applies to compassionate-release requests made by prisoners themselves (as opposed to requests made by the Bureau of Prisons). However, "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.3 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'" for a district court to employ. *Id.* at 1180.

So I'm left with the question of whether an extraordinary and compelling reason justifies release – and if so, whether release is appropriate given the factors in section 3553(a). As the Seventh Circuit has held, it is best to proceed in that order - only after finding an extraordinary and compelling reason for release need I, as part of "exercising the discretion conferred by the compassionate release statute, . . . consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (quoting *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021)).

I have reviewed the briefs and records in this case and conclude there are no "extraordinary and compelling reasons [that] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). I can look to the policy statement set out in USSG § 1B1.13 for guidance, and that provision offers specific examples of what constitutes an extraordinary and compelling circumstance, including, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition that

3

substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility; or other reasons determined by the Director of the BOP. USSG § 1B1.13 cmt n. 1.

Here, Adams' health issues by themselves do not constitute extraordinary or compelling reasons to reduce his sentence. He does face some health issues like diabetes and hypertension, but they seem to be well controlled. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Ayon-Nunez,* No. 1:16-CR-130-DAD, 2020 WL 704785, at *2-3 *(E.D. Cal. Feb. 12, 2020) (quotation omitted) (rejecting compassionate release reasoning "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

The real question here is whether Adams' health and weight, along with the enhanced risk of contracting COVID-19 at Terre Haute, justifies his release. The CDC recognizes that having diabetes "can make you more likely to get severely ill from COVID-19" and "possibly" hypertension can make you more likely to get severely sick. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed November 9, 2021). Adams' medical records state that he is not obese, although he weighs around 232 pounds. [DE 523-2 at 30, 98.]

Generally, I would say that even if Adams may be at an elevated medical risk

4

were he to contract COVID-19, these medical risk factors are mitigated by the fact that Adams has refused the vaccine. *See, e.g., United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (holding prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release); *United States v. Jackson*, No. 15-cr-2607 PAM/TNL, 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021) ("[defendant's] decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021); *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), [defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.").

While I am cognizant of this case law, I am also well aware that Adams has indicated that he cannot receive the vaccine because he has taken the flu shot before and was sick in the hospital, and the staff at Terre Haute allegedly told him if he got sick from the flu shot, there is a 90% chance he will get sick from the Pfizer vaccine and have to be hospitalized. [DE 533 at 1.] Adams has not presented any appropriate medical verification of an allergy, or pointed to anything in his medical records to justify this concern. According to the CDC, if a person has "had an immediate allergic reaction -

5

even if it was not severe - to a vaccine or injectable therapy for another disease, ask your doctor if you should get a COVID-10 vaccine. Your doctor will help you decide if it is safe for you to get vaccinated."

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/specific-groups/allergies.html#anchor_1624541541034 (last viewed November 9, 2021). I acknowledge that whether it is safe for Adams to receive the vaccine is a real concern for Adams, and I will assume for the purpose of this motion that it is true and genuine.

Nevertheless, I still don't find extraordinary and compelling reasons for his release. Adams' health concerns of diabetes and hypertension are managed with medication, and he is otherwise generally in good health and doesn't have any other serious physical conditions. He is only 39 years old. *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease."). Hopefully, the extreme efforts undertaken by the BOP and the fact that 338 staff members and 1881 inmates at Terre Haute FCI have been vaccinated, will help curtail the spread of COVID-19 at that facility. [DE 521 at 10.]

Because Adams cannot establish extraordinary and compelling reasons for release, it is unnecessary for me to consider the section 3553(a) factors. However, I will add for the sake of completeness, that these do not weigh in Adams' favor either. The section 3553(a) factors, which are well-known by this point, include the nature and

6

circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Adams' crime was extensive and serious - he was involved in an expansive drug conspiracy, involving huge quantities of drugs, and he was an organizer and leader. Adams has an extensive criminal history, he still has about three quarters of his lengthy sentence left, and I believe he may still pose a danger to the community.

Finally, Adams also alleges a violation of his Eighth Amendment right against cruel and unusual punishment, complaining about the prison conditions including lack of proper ventilation and no access to water or electricity at times. To allege an Eighth Amendment violation for unsafe prison conditions, the defendant must demonstrate that the prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "Eighth Amendment requires [jails and prisons] to take adequate steps to curb the spread of disease within the prison system." *United States v. Perez*, No. 18 CR 4145-H, 2020 WL 4732056, at *5 (S.D. Cal. Aug. 14, 2020). However, while Adams purports to raise a claim under the Eighth Amendment in his motion, "an Eighth Amendment claim relating to the manner and conditions of confinement – are not properly brought in a motion for compassionate release . . . and this Court does not

7

have jurisdiction to consider them." *Id.* at *5.

## Conclusion

For the aforementioned reasons, Lamonte Adams' motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 517] is DENIED.

ENTERED: November 10, 2021.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT